### 8571.  BOWEN *v.* THE STATE.

1. The act of 1915 (Acts of 1915, Extraordinary Session, p. 101) made it a penal offense for one to have in his possession prohibited liquors in bottles or receptacles of a capacity of less than one quart, or to have less than a quart of such liquors in more than one receptacle or bottle.
2. The evidence was wholly circumstantial and was not sufficient to exclude every reasonable hypothesis save that of the guilt of the accused.

DECIDED APRIL 24, 1917.

Accusation of misdemeanor; from city court of Carrollton—Judge Beall.  February 27, 1917.

*Buford Boykin,* for plaintiff in error.

*Willis Smith, solicitor,* contra.

WADE, C. J. 1. Section 18 of the act of 1915 (Acts of 1915, Extraordinary Session, p. 101) provides that "when more than one quart of the liquors mentioned in section 1 of this act [spirituous, vinous, malted, fermented, or other intoxicating liquors of of any kind] or prohibited liquors is received or had in possession, it must be in bottles or receptacles of a capacity of not less than one quart, and when a quart or less is so received or possessed, further declares that: "Failure to observe the provisions [of this it must be contained in one receptacle or bottle." That section section] or either of them shall constitute prima facie evidence that said liquors are kept or had in possession for sale or other unlawful disposition; and it shall be unlawful to receive or possess the liquors in quantities mentioned in receptacles or bottles that do not conform to the above requirements; but this section shall not apply to malted or similar fermented liquors such as beer, lager beer, or porter or ale." It is obvious that the section quoted above not only makes proof of the possession of certain intoxicating liquors, in receptacles of smaller capacity than that fixed thereby, prima facie evidence, in a criminal proceeding, that such liquors are kept or had in possession for sale or other unlawful disposition, but also expressly declares that "it shall be unlawful to receive or possess the liquors in quantities mentioned in receptacles or bottles that do not conform to the above requirements," and thus makes the fact that one is in possession of the prohibited liquors, in receptacles or bottles of smaller size than allowed by this section, itself a violation of law. Section 29 of the same act declares that the violation of any provision of the act shall be punished as for a misdemeanor.

It is clear, therefore, that under the provisions of section 18 of this act an accusation which charges that one "did unlawfully have in his possession one and one half pints of whisky in receptacles of less than one quart, to wit, in two pint bottles, contrary to the laws of said State, the good order, peace, and dignity thereof," set forth a distinct offense under the laws of Georgia, punishable as a misdemeanor, and that proof, whether direct or circumstantial, from which a jury, under the usual rules of evidence, would be authorized to infer that the defendant so charged had actually in his possession within the period of limitation and since the enactment

of this law a quantity of liquor in bottles or receptacles of a capacity of less than one quart each would warrant a conviction.

2. It was contended that the evidence in this case did not authorize the conclusion that the accused had in his possession any whisky at all, and therefore that his conviction was contrary to law. The testimony in behalf of the State showed that a police officer in the town of Temple, in Carroll county, saw the defendant, on the night of November 11, 1916, approach the defendant's house and "bend over right at his door-step. . . He went to his door-step, . . just went there and was fumbling around the steps like he was hiding something, stooped down," and then entered his house, and when the officer approached and investigated he found a pint and a half of whisky under the steps of the house at the point where the defendant had been seen stooping over and "fumbling." The officer testified, on cross-examination, that he did not mean to swear that he saw the defendant put the whisky there, but he found it under the defendant's house, and this was about all he knew about the matter—"two bottles there, one pint bottle and one half pint;" and he further testified that he knew the defendant lived in this house, together with his wife and brother. The testimony of one Robertson was practically identical with that of the police officer. The defendant in his statement admitted that he had stooped down at his door on the night in question, but said that he did so in order to get his door-key, and that was all he did, that he had not seen any whisky, and had had none in his possession; that he and his wife lived in this house, and his brother boarded there with him and worked at the oil mill. The witness Robertson, being recalled, testified that he went into the defendant's house on the night in question and found the defendant and his wife there, but the wife was not with the defendant at the time he saw him go to the house and saw him stoop down at the steps before entering. The evidence of the police officer further showed that on the night next preceding the night when the whisky was found under the door-step of the defendant's house, the witness saw him apparently place something under the steps, but upon search nothing was discovered at that time. It likewise appeared that the defendant was in the town "lock up" on November 11, up to a short time before he was seen to approach his home and stoop over and "fumble" under the door-step, just before the

whisky was found. It is true the whisky was found at the very entrance of the defendant's house, but it was found in a place which was apparently accessible to any person, and where it might have been temporarily secreted by any passer-by or by the wife or brother-in-law of the defendant (who occupied the house with him) without the knowledge of the defendant and altogether for the convenience of the person placing it there. The fact that the defendant's wife was actually in the house at the time he was seen to stoop over the steps and fumble for some object thereunder does not discredit his explanation that he was looking for his house-key with which to effect an entry; for the testimony does not disclose that the house was apparently lighted up when the defendant approached it, so that the presence of some person therein would have been indicated to him and the futility of looking for the key under the steps would have been suggested; and since the defendant had been in the town "lock up" all day and up to nine o'clock on the night of November 11, he may have had no opportunity otherwise to learn that his wife was at home and could open the door for him and save him from the necessity of finding the key and unlocking the door.

There was no direct evidence that the defendant was in possession of any prohibited liquors, and the circumstance that he had been seen to stoop over his door-step on the night of November 11, when approaching his house, and to fumble under the steps before entering the house, where he, his wife, and his brother resided, was insufficient to support the hypothesis of his guilt to the exclusion of every other reasonable hypothesis, notwithstanding that immediately after the defendant then entered his house one pint and one half-pint bottle of whisky were found under his door-step. The testimony that the defendant was also seen to stoop over his door-step on the night of November 10, immediately before entering his house, and that no whisky could then be found under the step, rather tends to corroborate his very reasonable explanation that he was only looking under the step for his house-key both on the night of the 10th and on the night of the 11th, and did not have or deposit any whisky there on either occasion.

There were no other circumstances in proof to arouse suspicion against the defendant, and not only was his explanation that he stooped over and fumbled under the step to find his house-key as

reasonable as the supposition that he was depositing whisky, which he then and there had in his possession in receptacles of forbidden size, but, as also above suggested, the further reasonable hypothesis could well be indulged that one. of the other two occupants of the house, or some person, without his knowledge or consent, deposited the bottles of whisky there solely for the convenience of the person depositing it, or that perhaps some designing enemy may have thus sought to entangle the defendant in the meshes of the law.

Though the evidence may have naturally created a suspicion of the defendant's guilt, yet his conviction being based altogether upon circumstantial evidence, which was insufficient under the requirements prescribed by section 1010 of the Penal Code, the trial judge erred in overruling the motion for a new trial.

*Judgment reversed. George and Luke, JJ., concur.*